In the United States District Court
For the Eastern District of North Carolina
Case No:

| | |
|---|---|
| J.H., by and through his parent and guardian, Tessiah Smithen, Plaintiff, | ) ) ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| WAKE COUNTY BOARD OF EDUCATION: DR. ROBERT P. TAYLOR, Superintendent of Wake County Public School System, in his individual capacity, CATTY QUIROZ MOORE, former Superintendent of Wake County Public School System, in her Individual capacity, PERRY AARON, Senior Administrator – Employee Relations at Wake County Public School System, in his individual capacity, STACY ALSTON, Principal of East Wake High School in his individual capacity, KATONIA FORD, Assistant Principal of East Wake High School, in her individual Capacity, EBONY FREEMAN, Special Education Department Co-Chair at East Wake High School, in her individual capacity, MARK SAVAGE Eastern Wake Area Superintendent, in his Individual capacity, PETER VIERNO, Transition Coordinator with Wake County Public School System, and JAMES RENCHER, III former teacher at East Wake High School, in his individual capacity, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Now Comes Plaintiff, J.H., by and through his parent and guardian, T.S., and for his

complaint for damages against the Defendants Wake County Board of Education, Dr. Robert P.

Taylor, Catty Quiroz Moore, Perry Aaron, Stacy Alston, Katonia Ford, Ebony Freeman, Peter Vierno, Mark Savage, and James Rencher, alleges and says as follows:

PARTIES

1. Plaintiff, J.H. is a twenty-two (22) year old disabled young man. At the time of the events complained of herein, J.H. was a student at East Wake High School ("EWHS"), a school under the administrative direction and control of Defendant Wake County Board of Education ("Defendant Board"). J.H. is a citizen and resident of Knightdale, Wake County, North Carolina.

2. Tessiah Smithen is a disabled Veteran and the mother of J.H. Ms. Smithen is a citizen and resident of Knightdale, Wake County, North Carolina. Ms. Smithen has guardianship of J.H.

3. Defendant Board is, and all times relevant to this action was, a body politic and local board of education as defined by Chapter 115C of the North Carolina General Statutes with the administrative direction and control of Wake County Public School System ("WCPSS").

4. Defendant Dr. Robert P. Taylor ("Defendant Taylor" or "Dr. Taylor") is the superintendent of the WCPSS. As Superintendent, Dr. Taylor owed a duty to implement all policies and rules adopted by the Department of Public Instruction and the State Board of Education for the organization and government of the public schools. The Superintendent is charged with providing training to WCPSS staff and ensuring compliance with federal and state laws. Under WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Dr. Taylor had a duty to report known or suspected abusive treatment of WCPSS students and any WCPSS teacher who commits such abusive treatment to the appropriate authorities and to protect students from such abusive treatment by WCPSS staff. Dr. Taylor is being sued in his individual capacity.

5. Catty Quiroz Moore ("Defendant Moore" or "Superintendent Moore") was, at certain times relevant to this action, the Superintendent of the Wake County Public School System ("WCPSS"). As Superintendent, Defendant Moore owed a duty to implement all policies and rules adopted by the Department of Public Instruction and the State Board of Education for the organization and government of the public schools. The Superintendent is charged with providing training to WCPSS staff and ensuring compliance with federal and state laws. Under WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Defendant Moore had a duty to report known or suspected abusive treatment of WCPSS students and any WCPSS teacher who commits such abusive treatment to the appropriate authorities and to protect students from such abusive treatment by WCPSS staff. Defendant Moore is being sued in her individual capacity.

6. Defendant Stacey Alston ("Principal Alston" or "Mr. Alston") is the Principal of EWHS. As Principal, Mr. Alston was responsible for ensuring that all children attending EWHS were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Principal Alston was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under North Carolina General Statute Section 115C-288(g), WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Principal Alston had a duty to report any known or suspected abusive treatment of students at EWHS, to report any EWHS teacher who commits such abusive treatment to the appropriate authorities, and to protect students from abusive treatment by EWHS staff. Defendant Alston was aware of the reports of James Rencher's abusive treatment of students and failed to act. He is being sued in his individual capacity.

7. Defendant Katonia Ford ("Defendant Ford" or "Ms. Ford") is an Assistant Principal at EWHS. As the Assistant Principal, Ms. Ford was responsible for ensuring that all children attending EWHS were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Ms. Ford was responsible for investigating conduct that violates Board policy or the Code of Student Conduct. Under North Carolina General Statute Section 115C-288(g), WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Ms. Ford had a duty to report any known or suspected abusive treatment of students at EWHS, to report any EWHS teacher who commits such abusive treatment to the appropriate authorities, and to protect students from abusive treatment by EWHS staff. Ms. Ford was aware of the reports of James Rencher's abusive treatment of students and failed to act. She is being sued in his individual capacity.

8. Ebony Freeman ("Defendant Freeman" or "Ms. Freeman") was the Special Education Department Co-Chair at EWHS. As the Special-Education Department Co-Chair, Ms. Freeman was responsible for ensuring that all children attending EWHS were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Ms. Freeman had a duty to report any known or suspected abusive treatment of students at EWHS, to report any EWHS teacher who commits such abusive treatment to the appropriate authorities, and to protect students from abusive treatment by EWHS staff. Ms. Freeman was aware of the reports that James Rencher's abusive treatment of students and failed to act. She is being sued in her individual capacity.

9. Mark Savage ("Defendant Savage" or "Mr. Savage") is the Eastern Areas Superintendent for Defendant Board. As the Area Superintendent over EWHS, Mr. Savage was responsible for

ensuring that all children attending EWHS were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Mr. Savage had a duty to report any known or suspected abusive treatment of students at EWHS, to report any EWHS teacher who commits such abusive treatment to the appropriate authorities, and to protect students from abusive treatment by EWHS staff. Mr. Savage was made aware of the reports of James Rencher's abusive treatment of students and failed to act. He is being sued in his individual capacity.

10. Peter Vierno ("Defendant Vierno" or "Mr. Vierno") is the Transition Coordinator for Defendant Board. As the Transition Coordinator Mr. Vierno was responsible for ensuring that all children attending EWHS were afforded equal access to a public education and for carrying out the educational policies created by Defendant Board or mandated by State and Federal law. Defendant Vierno had a duty to report any known or suspected abusive treatment of students at EWHS, to report any EWHS teacher who commits such abusive treatment tr. Vierno the appropriate authorities, and to protect students from abusive treatment by EWHS staff. Mr. Vierno was made aware of the reports of James Rencher's abusive treatment of students and failed to act. He is being sued in his individual capacity.

11. James Rencher, III ("Defendant Rencher" or "Mr. Rencher") was, at all times relevant to this action, a teacher within WCPSS where the physically, verbally and emotionally abusive treatment of J.H. giving rise to this action occurred. On multiple occasions, Defendant Rencher improperly engaged in physically, verbally, and emotionally abusive treatment of J.H. and other disabled students. He is being sued in his individual capacity.

JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

13. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a), which gives district courts original jurisdiction over "any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights." 28 U.S.C. § 1343(a).

14. Plaintiffs bring this action to redress disability discrimination in accordance with the provisions of Section 504 of the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. 794(a), and Title II of Americans with Disabilities Act ("ADA") of 1990, § 202, 42 U.S.C. §§ 12101 *et seq*.; as more fully set forth herein.

15. This Court has supplemental jurisdiction over North Carolina state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants are located within the Eastern District of North Carolina and a substantial part of the acts or omissions giving rise to this complaint arose from events occurring within this judicial district.

WAIVER OF GOVERNMENTAL IMMUNITY

17. Local Boards are separate corporate bodies that can sue and be sued. *See* N.C. Gen. Stat. § 115C-40, 42.

18. A school board waives its governmental immunity when it procures excess liability insurance coverage through the [North Carolina School Boards Trust] from a licensed commercial insurance carrier. *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2012 WL 4425439 at *10 (E.D.N.C. Sept. 24, 2012) (*quoting Lail ex rel. Jestes v. Cleveland Cty. Bd. of Educ.*, 183 N.C. App. 554, 561 (2007)).

19. Upon information and belief, Defendant Board has purchased, or caused the North Carolina School Board Trust to purchase, commercial liability insurance for the 2022-2023, 2023-2024, and 2024-2025 fiscal years, and, thus, has waived its governmental immunity.[1]

20. Although the State has not waived sovereign immunity for these individual State employees in the event that there is no commercial liability insurance, the State is responsible for the defense of State employees and for payment up to one million dollars ($1,000,000.00) of any judgment awarded in a court of competent jurisdiction against a State employee minus the first one hundred fifty thousand dollars ($150,000.00) which is paid by the State Board of Education. *See* N.C. Gen. Stat. § 143-300.6

<u>INDIVIDUAL DEFENDANTS DO NOT HAVE IMMUNITY</u>

21. Under North Carolina General Statute Section 115C-288(g), WCPSS Policy 4040 and North Carolina Administrative Code, 16 NCAC 06E .0107 and 16 NCAC 06C .0312, Defendants

---

[1] Wake County Public School System Adopted Budget, Fiscal Year July 1, 2022 – June 20, 2023, https://www.wcpss.net/cms/lib/NC01911451/Centricity/Domain/98/2022-23%20Adopted%20Budget.pdf (p.61) (last visited November 22, 2024); Wake County Public School System Adopted Budget, Fiscal Year July 1, 2023 – June 20, 2024, https://www.wcpss.net/cms/lib/NC01911451/Centricity/Domain/98/2023-24%20Adopted%20Budget.pdf (p.62) (last visited November 22, 2024); Wake County Public School System Board of Education's Proposed Budget, Fiscal Year July 1, 2024 – June 20, 2025, https://www.wcpss.net/cms/lib/NC01911451/Centricity/Domain/98/2024-25%20Board%20of%20Education%20Proposed%20Budget%20Internet%20V2.pdf (p.58)(last visited November 22, 2024)

were required to report Defendant Rencher's abusive treatment of C.K. and his other students to law enforcement and the State Board of Education.

22. WCPSS Policy 4040, which mirrors 16 NCAC 06C .0312, includes the additional reporting states:

3. Report of Criminal Misconduct

Any principal who has reason to believe that a student has been the victim of criminal conduct shall immediately report the incident in accordance with the Criminal Behavior Policy.

4. Report to State Superintendent of Public Instruction

Any administrator, including the superintendent, a deputy/associate/assistant superintendent, a personnel administrator, or a principal, who knows, has reason to believe, or has actual notice of a complaint that a licensed employee has engaged in misconduct resulting in dismissal, disciplinary action, or resignation shall report the misconduct to the State Board of Education within five days of dismissal, determination of disciplinary action, or acceptance of resignation. If the employee resigns within 30 days of a complaint for misconduct or during an ongoing investigation of a complaint, the misconduct is presumed to have resulted in the resignation. For purposes of this subsection, "misconduct" is any sexual offense or other criminal conduct that would justify automatic revocation of the employee's licensure pursuant to N.C.G.S. § 115C-270.35(b) or the infliction of physical injury against a child other than by accident or in self-defense. Failure to report misconduct is a felony and may result in the suspension or revocation of an administrator's license by the State Board of Education.

This reporting requirement applies in addition to any duty to report suspected child abuse in accordance with state law and the Child Abuse and Related Threats to Child Safety policy, as applicable.

23. Public employees are not entitled to immunity from negligence claims and may be liable for negligent acts personally committed during the course of his or her professional duties. *See Isenhour v. Hutto*, 350 N.C. 601, 611 (1999); *see also Reid v. Roberts*, 112 N.C. App. 222, 224, 435 S.E.2d 116, 119 (1993).

24. Public officials may be liable for negligence if their actions were "corrupt or malicious, or that [they] acted outside of or beyond the scope of [their] duties." *Smith v. Hefner*, 235 N.C. 1, 7

(1952); *see also Grad v. Kaasa*, 312 N.C. 310,313, 312 S.E.2d 888, 890 (1984)("A defendant

acts with malice when he wantonly does that which a man of reasonable intelligence would

know to be contrary to his duty and which he intends to be prejudicial or injurious to another.")

FACTUAL ALLEGATIONS

25. On or about July 11, 2019, Defendant Rencher was originally hired by WCPSS as an After

School Program Assistant.

26. In or about 2022[2], Defendant Rencher began working at EWHS as an In Class Resource and

Curriculum Assistance teacher in the Extended Content Standards ("ECS") Classroom.

WCPSS described ECS classrooms as follows:

> Students served in ECS classrooms benefit from a highly structured learning
> environment. Instruction has an emphasis on individual communication and social
> skills. ECS regional programs respond to the needs of students who require visual
> and physical support and a consistent, predictable daily routine.[3]

27. On or about September 15, 2022, Kimberly Tucker, a former Extended Content Support

teacher at EWHS, contacted Defendant Vierno to report that Defendant Rencher was having

difficulty working with the ECS students. Ms. Tucker requested that Defendant Vierno speak

with Defendant Rencher.

28. On or about October 17, 2022, Ms. Tucker emailed Defendants Ford, Alston, and Freeman

concerning Defendant Rencher's treatment of J.H. Specifically, Ms. Tucker explained that she

observed Defendant Rencher kick an exercise ball from under J.H. which caused J.H. to fall to

the floor, and that she reached out to Defendant Vierno concerning the same.

---

[2] https://www.wral.com/story/teacher-facing-assault-charge-has-been-substituting-in-durham-public-schools/21617952/
[3] WCPSS Special Education Services Program Descriptions and Locations,
https://www.wcpss.net/cms/lib/NC01911471/Centricity/Domain/107/2018-
19%20Special%20Education%20Services%20Landscape.pdf (last visited November 22, 2024)

29. Ms. Tucker expressed concern that Defendant Rencher did not have the appropriate training or temperament to work with ECS students without getting angry with or abusing them.

30. While Defendant Alston acknowledged receipt of Ms. Tucker's email, his de minimis response led Ms. Tucker to believe that he did not understand the severity of the situation.

31. Ms. Tucker sent a subsequent email around 2:00 p.m. In this correspondence, Ms. Tucker further explained to Defendant Ford and Defendant Stacey Alston that she witnessed Defendant Rencher abuse J.H. in the classroom on September 14, 2022. She observed Defendant Rencher kick an exercise ball from underneath J.H., causing J.H. to fall. J.H. made audible noise which seems to indicate he may have sustained injury. Defendant Rencher stormed away while yelling at J.H. not to get on the ball again. Ms. Tucker also reported that she has witnessed Defendant Rencher shove J.H., and another student, out of the room and slam the door behind them.

32. Upon information and belief, Defendant Alston, Defendant Ford and Defendant Vierno, failed to take any action that Ms. Tucker reported teacher on student assault took any affirmative action in response to her report.

33. Ms. Tucker's communication was intended to bring this matter to the attention of the school's administration.

34. In or about September 2022, Angela Blalock typed a letter describing the abuse that she witnessed Mr. Rencher inflicted on J.H., and other nondisabled students. Ms. Blalock's letter stated:

> Good afternoon,
>
> Unfortunately I am sitting here typing and hoping and praying I am doing the right thing. I am not one that likes drama or confrontation for that matter but I feel like the only right thing to do at this point is speak up. There have been concerns in our

classrooms already going into our third week of school. I have documented some situations that have stood out to me.

[redacted]

[redacted]

9-4-2022

Mr. Rencher was on the phone with a parent and Justin began to make very loud noises. Mrs. Bolden didn't seem to get him out fast enough in his eyes and he shoved him with both hands like a grown man out the door into the kitchen area. Also, later in the day when [J.H.] was content he yelled in his ear.

[redacted]

9-8-2022

This afternoon we were doing a craft with Ms. Tucker's class. He changed the plan and asked Mrs. Bolden to go help Mrs. Brinkley's class and [J.H.] to stay with him. While in the Tucker's class Justin ran to Ms. Tuckers class which is a normal day occurance (sic) to say hello and he grabbed him back the back of shirt forcefully and [J.H.'s] shirt was tight around his neck.

9-9-2022

On this day again [J.H.] was content and he walked over and took his toy dinosaur out of his hand. So, needless to say [J.H.] got loud with his noise making.

[redacted]

So far every day has seemed to be a struggle because I feel like something is, going to happen that doesn't sit right with me. I feel like I have to be an advocate for these children that can not be ·advocates for themselves. While these are the episodes that I dated and wrote down there are a handful of situations that I didn't but could sit and recount what happen.

35. Similarly, in or about October 2022, Dorthy Blount penned a multi-page narrative about what

the abuse that she witnessed Defendant Rencher commit against J.H.

On the first page, Ms. Blount states:

(During the 1ˢᵗ week of school)

Things that have took place in the classroom 2525 that I have witness. Mr. James phone ranged. He picked up and started to talk to the other person on the line. [J.H.] begain to make loud noises as he usually do in the classroom. Mr. James gets up out of his chair and goes where Justin is sitting. He grabbed [J.H.] under his arms forcefully and pick [J.H.] up out of the chair and forcefully takes him the kitchen door. Mr. James takes both of his hand put them on [J.H.] back and push him out the door into the kitchen. (sic)

36. On the second page, Ms. Blount states:

(During the 1st week of school)

Mr. Jones gets [J.H.] and brings him [J.H.] to the gym without Mrs. Boulden. She stays in the classroom thinking Mr. James will stay with [J.H.] during P.E. Mr. James drops or leaving [J.H.] not telling anyone that he left [J.H.] during P.E. me – Mrs. Blount or, Mrs. Blalock. So when I see [J.H.] I'm looking for Mrs. Boulden. So I get [J.H.] until Mrs. Boulden comes. Mrs. Boulden did not know that he would just be drop off b/c I ask her. I then was trying to call Boulden and find out or understand who he was just drop off not informing or letting us know in advance so we (Mrs. Blount + Blalock) could be aware.

37. On the third page, Ms. Blount states:

Time 2:35 P.M.                    10-19-2022

Mrs. Ford came to me with a question. Asking have I seen Mr. James kick the ball from up under [J.H.]. I said yes and other things also that is documented. I have seen Mr. James kick the ball from up under him and also push him off the ball to get it away from him to put it up b/c he was making loud noises. [J.H.] will fall off the ball but have not seen any injury.

38. On or about November 8, 2022, Ms. Smithen received an anonymous letter in the mail that informed her that Defendant Rencher was verbally and physically abusing J.H. and other students in his class and making racist and/or sexual statements in front of them.

39. Ms. Smithen immediately contacted Defendant Alston and requested to meet with him.

40. On or about November 11, 2022, Ms. Smithen met with the EWHS administrators. During the meeting, she explicitly asked Defendant Alston if he was aware of the allegations of abuse against Defendant Rencher. He acknowledged that he was, in fact, aware.

41. On January 30, 2023, T.S. submitted a message through WCPSS' Let's Talk application regarding Defendant Rencher's verbal and physical abuse toward nonverbal disabled students. T.S.'s message read as follows:

Good day, on or about the 8th of November 2022, I received a anonymous letter (see copy below) informing me that my son's teacher (at the time) Mr. Rencher, James, was "verbally and physically abusing the children in his class. He made racists comments and inappropriate sexual statements in front of the kids" as well.

I'm not sure exactly when the letter was placed in my mail box, but on the 10th of Nov, when I checked my post box and saw/read the letter, immediately contacted the school and requested to talk with Mr. Alston and any other member not associated with the school. At 3pm, the meeting convened with Mr. Alston, Mr. Tillman, and Mrs. Ford. I had met Mr. Tillman earlier at an IEP meeting, but had never in my son's 4 years met Mrs. Ford. During the meeting, I showed each person the letter, and envelope and explained my anger and frustration. I asked Mr. Alston if he was aware of the allegations, and he said "some, but not all". During the entire hour, Mrs. Ford barely commented, and she's over the Department. It was mentioned that there was an ongoing investigation on Mr. Rencher, so they couldn't talk about the allegations.

My anger was this, (and I said this)...how bad had the situation/environment gotten that someone sent me, a parent, this letter? Had their concerns not been addressed? Why not? If the administration knew, why wasn't there any memo sent out to the parents? My God, the kids in that classroom are all non-verbal! Who is to say that teacher isn't a predator who preys on our SPED ED kids?! Did this occur in New York at his old job? HOW could the Dept Chair and the Principal sit there and do nothing when a parent is bringing this type of information to them? A teacher at East Wake Academy was questioned because female students spoke up. The ABC Pre-School in Wendell said nothing of their accused until WRAL broke the interview. The end of the quarter has occurred, and still NOTHING to the parents from the. Administration. Knightdale HS had a serial killer, nothing was done. East Wake HS had an (alleged) teacher who was physically and verbally abusing his kids, and the Admin did nothing. The teacher was 'given a promotion and allowed to transfer to another school'. I'm nauseated having to relive my anger, fear, and total distrust for East Wake Admin.

After the meeting, nothing has been said or done. During the meeting, I asked for my son to be moved immediately to another classroom until that teacher left, he wasn't. My son stayed in that man's classroom until his last day. I sent a copy of the letter to WRAL back in Nov...hoping they'll reach out. I am disgusted with how our SPED ED kids are continuously treated at that school. My anger and frustration is at an all time high, with the knowledge that the entire management sat on their butts

and did NOTHING when complaints were brought against that teacher. My son graduates in2024, and for the past 4 years...the lack of support from the upper management their is pitiful. Four years, and I only met Mrs. Ford, whose over the Dept, because of the allegations. My fight for accountability will not stop. One day, when my son's aide was absent, when I picked up my son, I noticed when I got him home, he had massive bruises on his arms. Not thinking too much of it, at the time; until I got THE letter. Had he been abused by said teacher? Are the aids so afraid of retribution (loss of job) that they refused to speak up, those allowing the kids to be abused? There are just too many questions, and no one has had the decency to inform us, the parents. This was literally swept under the rug. I'm so ashamed of WCPSS. How could you all just allow this to happen and not say/address it? Aren't you all ashamed of yourselves?

42. Michelle Fitzsimmons, the Administrative Assistant to Mark Savage, Defendant Board's Eastern Area Superintendent, confirmed receipt of T.S.'s message, and advised Defendant. Savage will follow up to discuss her school-based concerns, and that a copy of Ms. Smithen message would be provided to WCPSS human resources department regarding the staff behavior allegations.

43. On or about December 5, 2023, Ms. Smithen submitted another message to WCPSS via Let's Talk to express her grave concern about the Defendant Board's failure to respond to or otherwise address the allegations that Defendant Rencher was abusing disabled students at EWHS. Ms. Smithen recounted bringing the allegations to Defendant Alston's attention in November of 2022.

44. Ms. Smithen expressed frustration that neither Defendant Board nor any of its agents, including, *inter alia*, Defendant Alson, Defendant Ford, Defendant Rodney Tillman and Mr. Savage, were ever transparent about the status of the investigation of the allegations against Defendant Rencher, or what, if any measures would be taken to address the situation.

45. Ms. Smithen reminded the Defendants of their obligation to take immediate and decisive action to thoroughly investigate the allegations that Defendant Rencher abused J.H., and other

disabled students, to ensure the safety and well-being of the affected students and hold the responsible parties accountable.

46. Finally, she requested an update on the status of the investigation including the explicit steps Defendant Board would be taking to address the situation in a timely and appropriate manner.

47. On December 6, 2023, Susanna Webb, the Executive Assistant to the Superintendent, responded to Ms. Smithen's message and advised that Dr. Mark Savage would follow up with her.

48. On December 26, 2023, Ms. Tucker forwarded her October 17 email, as described in an email to Defendant Perry.

49. On or about April 17, 2024, Ms. Smithen emailed Defendant Alston, Defendant Ford and Rodney Tillman, the EWHS school psychologist, concerning Defendant Rencher's physical and verbal abuse of J.H. Her email read as follows:

> Back on November 10th 2022 at 3pm, we all met to discuss the anonymous letter that was sent to me regarding Mr. Rencher. When I asked Mr. Alston if he was aware of the stated allegations he said "one of the allegations, but I cannot speak on it because HR has been notified and there is an ongoing investigation."

> Mr. Tillman quoted that the contents of the letter "hit me like a ton of bricks ", and Ms. Ford, who's the SPED ED Dept Chair, said nothing.

> During the meeting, I voiced my concerns, not only for my son's welfare, but the other kids that were in that classroom under Mr. Rencher's supervision. We, all members present, discussed Justin moving to another classroom until Mr. Rencher departure (as he'd mentioned previously during the 1st IEP Meeting Oct 13, 2022 that he was transferring to another school).

> At the conclusion of the meeting, I asked if there would be a follow up and I was told you would "get back with me ". That meeting was Nov 10, 2022, and since then I have not heard anything from anyone that was in that meeting regarding the anonymous letter received. There were no attempt to alert other parents or even offer therapy for the kids. For the past year and a half, neither you or your team have mentioned any investigation outcomes, have not held another meeting to inquire on the health & safety of my son or even asked how I was doing after receiving such disturbing information about my son's teacher.

East Wake HS literally did nothing when confronted about alleged abuse on their SPED ED kids. Now, my son is graduating in June of 2024, and as of today April 17th, neither you or your staff have informed me of any progress or results of the investigation. You all took an oath as Educators to teach and protect our kids, and you failed; instead you allowed an alleged predator free access to them, then shook his hand as he went to another school.

If I may ask, what was the outcome of the investigations?
- Why wasn't there ever a follow-up to the letter/concern I brought to you and your team?
-Was an investigation ever opened from HR and/or from WCPSS?
-Were the teachers/aids in that classroom or any of the other two SPED ED classes interviewed regarding the alleged abuse?

Mr. Alston, were you all ever going to follow up with me on the matter, or just sweep it under the rug and hope I'd forget? Hope that he'd graduate so your official response would be…"former" student?

I'm so extremely appalled, that after almost two years, I'm still waiting for ANSWERS on what happened in that classroom.

50. On or about April 16, 2024, Keely Arthur, a reporter with WRAL, contacted Lisa Luten, communications director; Anthony Mutillo, human resources; and Defendants Savage and Aaron regarding the anonymous letter Ms. Smithen, and another parent received, informing them that Defendant Rencher was abusing their children.

51. On or about April 17, 2023, Sara Clark, the Senior Communications Director of WCPSS responded to Ms. Arthur's email. She indicated that the matter "was initially investigated and addressed in November 2022". Ms. Clark further alleged that in January 2023, Ms. Smithen contacted the district about the investigation of Defendant Rencher was handled, that the matter was reopened, and the investigation was still going."

52. On or about April 23, 2024, Ms. Smithen contacted Defendant Board about their failure to properly investigate, report or discipline Defendant Rencher for the verbal and physical abuse he inflicted upon J.H., and the frequent inappropriate comments he made in front of J.H.

53. Ms. Smithen was flabbergasted that Defendant Rencher was allowed to remain in J.H.'s classroom despite Defendant Alston acknowledgement, prior to Ms. Smithen's report of the anonymous letter, that he was aware of the abuse allegations against Defendant Rencher, that Defendant Rencher was nonetheless allowed to transfer to a different school within the district despite these allegations, and that the Defendant Rencher employment with the district only ended after Defendant Board was notified that the story would air on WRAL.

54. Ms. Smithen questioned Defendant Board's compliance with its own abuse policies and procedures, and whether those policies and procedures were sufficient. Furthermore, Ms. Smithen questioned the culture of Defendant Board to be aware of these allegations and still allow Defendant Rencher to be around some of the most vulnerable children in the district.

55. Ms. Smithen renewed her concerns about the lack of communication from the Defendants about the status of the investigation against Defendant Rencher. She also expressed concern that Defendant Rencher was allowed to resign from the District as opposed to being terminated, thereby making him eligible for future employment with other school districts.

56. Ms. Smithen also expressed concerns about Defendant Board's failure to provide all of J.H.'s educational records, including those related to Defendant Rencher abusing him. When Ms. Smithen finally received some of the records, they were so heavily redacted that she was not able to fully understand them.

57. Ms. Smithen expressed a desire to be collaborative with the district but emphasized that Defendant Board must comply with federal and state law, as well as state policies, particularly related to J.H.'s status as a person with a disability.

58. While Ms. Smithen expressed a willingness to work with Defendant Board and WCPSS to address the concerns about Defendant Rencher, she was candid about her consultations with

various individuals and organizations regarding the rights of disabled individuals in North Carolina.

59. Finally, Ms. Smithen emphasized her disappointment, as a disabled Veteran, that Defendant Board failed to address the allegations against Defendant Rencher with the seriousness and speed it required.

60. Upon information and belief, only after being contacted by WRAL, the district terminated Defendant Rencher's employment.

61. However, Defendant Rencher's termination did not come until after he had been transferred

62. On or about May 17, 2024, upon learning that WRAL would, in fact, be running a story about Defendant Rencher, and in response to being asked for a comment for the same, Ms. Luten responded as follows:

> While we cannot comment on specific student or employee matters, the school system recognizes that a recent review of a parent complaint took a significant amount of time to complete. We cannot offer details on interim steps and phases of the review, but taking appropriate steps to address student safety is an utmost.

> With regard to the review of our complaints, we are committed to reviewing our practices to improve our responses to parent concerns, upgrading our processes to ensure that we respond to parent inquiries regarding investigations as quickly as we are able, and including as much information when communicating with the parents we are permitted by law to share. These efforts will include:

> Strengthening checkpoints in our investigative processes to ensure the information we can legally provide to parents is communicated in a timely manner; and

> Transitioning to a new platform for tracking and documenting cases.

> We recognize that this is a continued area for improvement and strive to increase our responsiveness to inquiries regarding parent complaints. We will continue to examine and strengthen our processes to ensure we review and respond to concerns regarding staff conduct as quickly as possible.

63. On May 24, 2024, Ms. Smithen emailed Perry Aaron, Defendant Board's Senior Administrator for Investigations, Lisa Luten, Farida Qalandri and Defendant Alston and formerly requested

J.H.'s complete educational records including, "any and all investigative records/documents that mentioned [J.H.] in regards to any complaints from teachers, students, aids, onlookers, and anyone that may have shared information of abuse by Mr. Rencher."

64. On or about May 30, 2024, Ms. McArthur contacted Ms. Clark and Ms. Luten about another parent, who is employed by WRAL, seeing the story and coming forward with information that he had also received the same anonymous letter concerning his child who was also a student in Defendant Rencher's class at EWHS.

65. Ms. McArthur explained that both parents were receiving contradictory information from Defendant Alston about the existence of an investigation of Defendant Rencher and whether the parents of the other students in J.H.'s class were informed. Ms. McArthur also notified Defendant Board that one of the parents received an anonymous voicemail that Defendant Rencher, who was relocated to a different school, was still continuing to abuse children.

66. On June 3, 2024, Mr. Aaron responded to Ms. Smithen's request for investigative records and advised that the Defendant Board would respond soon.

67. Defendant Board is responsible for providing full and equal access to public educational programs and activities offered in Wake County in accordance with state law and the North Carolina Constitution.

68. Defendant Taylor was the Superintendent of WCPSS when Defendant Rencher was assigned to a different WCPSS school after at least two allegations of abuse.

69. Mr. Rencher was permitted to continue his employment with WCPSS until the Wake County Sheriff's Department filed criminal charges against him due, in part, to Ms. Smithen's complaint.

70. Defendant Rencher physically, verbally and emotionally abused J.H. during his tenure at EWHS. Defendant Rencher was abusive to at least one other nonverbal disabled student while employed by WCPSS.

CAUSES OF ACTION AND CLAIMS FOR RELIEF

COUNT 1: DISCRIMINATION BASED ON DISABILITY IN
VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
29 U.S.C. § 794, *et. seq.* (Defendant Board)

71. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

72. Plaintiff J.H. is a "handicapped person" as defined by the regulations of Section 504 of the Rehabilitation Act ("Section 504") and is otherwise qualified to attend school in Defendant Board's school district. 34 C.F.R. §104(3)(j)(1); 34 C.F.R. §103 (3)(1)(2).

73. Section 504 applied to each recipient of federal financial assistance from the Department of Education and to the program or activity that receives such assistance 34 C.F.R. § 104.2. Defendant Board is a "recipient of Federal financial assistance from the Department of Education" that operates a program or activity as defined by the regulations of Section 504. 34 C.F.R. §104.38; 34 C.F.R. §104.34.

74. Section 504 prohibits public entities, including local education agencies, from "exclude[ing] from the participation in, [ ] den[ying] the benefits of, or [ ] subject[ing] to discrimination" any otherwise qualified person with a disability from any program or activity receiving federal financial assistance solely by reason of his disability. 29 U.S.C. § 794(a).

75. From at least the Fall of 2022 through the Spring of 2024, Defendant Board discriminated against J.H. by excluding him from participation in a program, denying him the benefits of a program, and subjecting him to discrimination solely on the basis of his disability.

76. Defendant Board knew Defendant Rencher was engaging in physically, emotionally, and verbally abusive treatment of J.H. and that said abuse precluded him from accessing his education.

77. J.H. suffered the following abusive treatment, *inter alia*, during instructional time in response to manifestations of his disability:

    a.  Defendant Rencher kicking the exercise ball he was sitting on out from underneath him, causing him to fall;

    b.  Defendant Rencher shoving him out of the classroom and slamming the door behind him;

    c.  Defendant Rencher yelling in J.H.'s ear;

    d.  Defendant Rencher forcibly pulling J.H. by the collar of his shirt;

    e.  Defendant Rencher taking items from J.H. when J.H. was content;

    f.  Defendant Rencher putting his hands under J.H.'s arms, forcibly yanking him up, and shoving him out the door;

    g.  Making sexual and racist remarks around J.H.; and

    h.  Verbally and emotionally abusing J.H.

78. Defendant Board's failure to address the abusive and discriminatory practices employed against J.H.., that differed from the treatment of his nondisabled peers, demonstrates gross misjudgment and departs from all standards of professional judgment.

79. Defendant Board acted in bad faith when it failed to properly investigate or report Defendant Rencher's abusive treatment of J.H. due to his disability related behaviors although it is required by law and its own policy to do so.

80. Defendant Board acted in bad faith and with gross misjudgment when it allowed Defendant. Rencher continued teaching in the 2022-2023 and 2023-2024 school years despite the reports of his abusive treatment of the disabled children entrusted to his care.

81. Defendant Board acted in bad faith and with gross misjudgment when it moved Defendant Rencher into a self-contained classroom with severely disabled, non-verbal students in the 2022-2023 school year, and permitted him to remain in that classroom for the 2023-2024 school year despite multiple allegations and documentation supporting that Mr. Rencher engaged in a pattern of physically, verbally, and emotionally abusive treatment.

82. Defendant Board acted in bad faith and with gross misjudgment when it waited at least six hundred and two (602) days after learning of the allegations that Defendant Rencher abused disabled children at EWHS before contacting law enforcement.

83. Defendant Board is vicariously liable for the bad faith actions and gross misjudgment of its subordinates including:

   a. Failing to report, investigate, or take other corrective action after learning of Defendant Rencher's abusive treatment of J.H. and other disabled students;

   b. Allowing Defendant Rencher to subject J.H. to recurring physically, verbally and emotionally abusive treatment due to his disability related behaviors; and

   c. Allowing Defendant Rencher to transfer within the WCPSS to continue to abuse other disabled children.

84. Defendant Board knew Defendant Rencher's abusive treatment of J.H. denied him equal access to education as his similarly situated peers including:

   a. Defendant Rencher kicking the exercise ball he was sitting on out from underneath him, causing him to fall;

b. Defendant Rencher shoving him out of the classroom and slamming the door behind him;

c. Defendant Rencher yelling in J.H.'s ear;

d. Defendant Rencher forcibly pulling J.H. by the collar of his shirt;

e. Defendant Rencher taking items from J.H. when J.H. was content;

f. Defendant Rencher putting his hands under J.H.'s arms, forcibly yanking him up, and shoving him out the door;

g. Defendant Rencher refusing to change J.H.'s diaper;

h. Making sexual and racist remarks around J.H.; and

i. Verbally and emotionally abusing J.H.

85. As a direct and proximate result of Defendant Board's discrimination based on J.H.'s disabilities, Plaintiffs sustained and continue to sustain damages in excess of One Hundred Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial. Plaintiffs' damages include, but at not limited to:

a. Past, present and future physical pain, psychological suffering and psychological impairment;

b. Medical bills, counseling, and other costs and expenses for future psychological care;

c. Compensatory damages; and

d. Attorney's Fees.

<u>COUNT II: DISCRIMINATION BASED ON DISABILITY
IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
42 U.S.C. § 12101, *et. seq*. (Defendant Board)</u>

86. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

87. J.H. is a "qualified individual with a disability" as defined by the Americans with Disabilities Act, as amended ("ADA"). 42 U.S.C. § 12131(2).

88. Defendant Board is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131(2).

89. Title II of the ADA and Section 504 are closely related, and there is no significant difference in the rights and obligations created by the two laws, or their analysis.

90. Title II of the ADA states "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

91. Defendant Board discriminated against J.H. by excluding him from participation in a program and denying him the benefits of the services, programs, and activities of a public entity, the WCPSS, was motivated by his disability, in violation of the ADA. 42 U.S.C. § 12132.

92. Defendant Board allowed the abusive treatments and punishments of J.H. that were motivated by his disability although his nondisabled peers did not experience the same punishments for similar behaviors. By way of example and not limitation, his non-disabled peers were not assaulted on and about the head, forced by their ankles down a flight of steps, or aggressively pushed toward the bathroom.

93. As a direct and proximate result of Defendants discrimination based on J.H.'s disability, Plaintiffs sustained, and continue to sustain, damages in excess of One Hundred Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial Plaintiffs' damages include, but are not limited to:

    a. Past, present and future physical pain, psychological suffering and psychological impairment;

b.  Medical bills, counseling, and other costs and expenses for future psychological care;

c.  Compensatory damages; and

d.  Attorney's Fees

<u>COUNT III: Supervisor Liability (42 U.S.C. §1983)</u>
<u>(Defendants Dr. Robert P. Taylor, Catty Quiroz Moore,</u>
<u>Perry Aaron, Stacy Alston, Katonia Ford, Ebony Freeman )</u>

94. Plaintiffs reallege the foregoing allegations and incorporate them by reference herein.

95. As senior officials for Defendant Board and/or WCPSS, Defendants Taylor, Moore, Aaron, Alston, Ford, and Freeman, were responsible for oversight and administrative control of WCPSS and WCPSS staff.

96. These Defendants were directly involved in the day-to-day operations of Defendant Board, WCPSS and EWHS

97. These Defendants were notified, by at least two different staff members that Defendant Rencher was verbally and/or physically abusing disabled students in the ECS classroom.

98. None of these Defendants took affirmative action in response to the notifications of the abuse.

99. Each of these Defendants bore some responsibility to keep the Defendant Board informed concerning the conditions in WCPSS and/or at EWHS, including, but not limited to, ensuring the appropriate training was provided to EWHS staff, and reporting any allegations of child abuse as mandated by North Carolina law.

100.  Each of these Defendants have a mandatory duty to report assault and physical abuse and teachers who engage in such behavior against their students;

101.    Each of these Defendants knew or learned of Defendant Rencher's abusive treatment of J.H. and other disabled students.

102.    Each of these Defendants knew of the physical, psychological, and emotional harm the abusive treatment would cause J.H., and other disabled students subjected to such treatment.

103.    All of these Defendants had an obligation to investigate the allegations against Defendant Rencher and/or to report Defendant Rencher's abusive actions to law enforcement. None of these Defendants made such a report until June 2024.

104.    As a result of these Defendants failure to properly train their staff, follow up on the concerns of several staff members, and/or to take appropriate action regarding the same, J.H. suffered damages in excess of $100,000.00 an amount to be proven at trial. Plaintiffs' damages include, but are not limited to:

    a.  Past, present and future physical pain, psychological suffering and psychological impairment;

    b.  Medical bills, counseling, and other costs and expenses for future psychological care;

    c.  Compensatory damages; and

    d.  Attorney's Fees.

COUNT IV
NEGLIGENCE
(Defendants Taylor, Moore, Alston, Ford, Freeman,
Savage, and Defendant Rencher in their individual capacities)

105.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

106.    Negligence, at common law, contains three elements: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach. *Fussell v. N.C. Farm Bureau Mut. Ins. Co.,* 695 S.E.2d 437, 440 (N.C. Sup. Ct. 2010).

107.    Defendant Rencher breached his duty of ordinary care when he physically, verbally and mentally abused nonverbal disabled students entrusted to his care.

108.    Defendants Taylor, Moore, Alston, Ford, Freeman, and Savage breached their ordinary and reasonable duty of care to protect J.H. and other disabled students in their charge, despite knowing of Defendant Rencher's abusive treatment of his students.

109.    Defendants Taylor, Moore, Alston, Ford, and Freeman were negligent in supervising Defendant Rencher and ensuring he had appropriate training to work with students with disabilities.

110.    Defendants Taylor, Moore, Alston, Ford, and Freeman also breached their duty to report Defendant Rencher's assault against of J.H and physically, emotionally, and verbally abusive treatment of J.H. to law enforcement and the State Board of Education under North Carolina General Statutes Section 115C-288(g), the North Carolina Administrative Code, and Defendant Board's Policy 4040.

111.    These Defendants have a mandatory duty to report assault and physical abuse and teachers who engage in such behavior against their students.

112.    These Defendants knew of Defendant Rencher's abusive treatment of J.H. and other disabled students.

113.    These Defendants knew of the physical, psychological, and emotional harm the abusive treatment would cause J.H.., and other disabled students subjected to such treatment;

114.    Any school employee of reasonable intelligence would know to investigate and report Defendant Rencher's abusive actions to law enforcement and the State Board of Education;

115.    None of the Defendants made such a report until June 2024.

116. These Defendants acted maliciously and corruptly by choosing not to J.H. and report Defendant Rencher to law enforcement and the State Board of Education, something any reasonable school official would know to do.

117. By turning a blind eye to Defendant Rencher's abusive treatment of J.H.. and other disabled students, and, in fact, encouraging J.H.'s parents to ignore the anonymous report, Defendants Taylor, Moore, Alston, Ford, and Freeman endorsed Defendant Rencher's behavior and understood his intention to continue to harm students.

118. As such, Defendants Taylor, Moore, Alston, Ford, and Freeman knew there would be continued harm to C.K. and other students and themselves intended this harm to befall students with disabilities.

119. As a result of these individual Defendants Taylor, Moore, Alston, Ford, and Freeman's negligence, Plaintiffs suffered injuries, including, but not limited to:

    a. J.H. experienced continued emotionally, verbally, and physically abusive treatment by Defendant Rencher while at school;

    a. J.H. suffered emotional damage as a result of the abusive treatment; and

    b. J.H. lost access to his education as a result of the abusive treatment.

120. Defendant Rencher breached his duty of ordinary care to protect students, including J.H., from injury and damage, causing injuries to J.H.

121. Due to Defendant Rencher's abusive actions, J.H. lost instructional time constituting educational harm and suffered emotionally harm and other ongoing medical issues.

122. The actions and omissions of Defendants Taylor, Moore, Alston, Ford, Freeman and Rencher were the proximate cause of J.H.'s injuries, including lost educational opportunity, emotional harm, physical harm, and psychological damage.

123.   Plaintiffs sustained, and continue to sustain, damages in excess of One Hundred Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial. Plaintiffs' damages include, but are not limited to:

   a.   Past, present and future physical pain, psychological suffering and psychological impairment;

   b.   Medical bills, counseling, and other costs and expenses for future psychological care;

   c.   Compensatory damages; and

   d.   Attorney's Fees.

<u>COUNT IV</u>
<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>
<u>(Defendants Taylor, Moore, Alston, Ford, Freeman,</u>
<u>Savage, and Defendant Rencher in their individual capacities)</u>

124.   Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

125.   A defendant is liable for negligent infliction of emotional distress when "(1)the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Acosta v. Byrum*, 180 N.C. App. 562, 667 (2006) (*quoting R. Johnson v. Ruark Obstetrics,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

126.   Defendant Rencher negligently engaged in conduct that was reasonably foreseeable to cause J.H. severe emotional distress and did, in fact, cause J.H.. severe emotional distress, when she engaged in physically, verbally, and emotionally abusive treatment of J.H. as described.

127.   Defendants negligently engaged in conduct and failed to follow a duty of conduct imposed by law (i.e., the duty of ordinary care) to protect Plaintiff J.H. from injury and damage, when

they knew of Defendant Rencher abusive treatment of J.H. and other students, failed to intercede, failed to investigate, and took no remedial steps to prevent it from reoccurring.

128. Again, by turning a blind eye to Defendant Rencher's abusive treatment of J.H. and other disabled students, Defendants endorsed his behavior and understood her intention to continue to harm students. As such, Defendants knew there would be continued harm to J.H. other students and themselves intended this harm to befall students with disabilities.

129. J.H. suffered severe emotional distress as a result of Defendants' failures including, but not limited to:

    a. J.H.'s aversion to attending school;

    b. J.H.'s increased maladaptive behaviors; and

    c. J.H. being more easily agitated and crying more frequently.

2. Defendants Taylor, Moore, Alston, Ford, and Freeman negligence was a proximate cause of C.K.'s severe emotional distress, which Defendants should have foreseen as the natural and continuous sequence of their negligent actions.

3. As a direct and proximate result of Defendants Taylor, Moore, Alston, Ford, and Freeman negligent infliction of emotional distress, Plaintiffs sustained, and continue to sustain, damages in excess of One Hundred Thousand Dollars and no Cents ($100,000.00) in an amount to be determined at trial Plaintiffs' damages include, but are not limited to:

    a. Past, present and future physical pain, psychological suffering and psychological impairment;

    b. Medical bills, counseling, and other costs and expenses for future psychological care;

    c. Compensatory damages; and

    d. Attorney's Fees.

CONCLUSION

NOW THEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Wake County Board of Education and the named individual Defendants.

JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted, this the 27th day of November, 2024.

/s/ Neubia L. Harris
Neubia L. Harris
N.C. Bar No.: 42069
The Law Office of Neubia L. Harris, PLLC
312 W. Millbrook Road, Ste. 141
Raleigh, NC 27609
(919) 526-0500 (telephone)
(919) 589-3935 (facsimile)
neubia@neubiaharrislaw.com
*Attorneys for Plaintiff*